784 P.2d 301

**LEO EISENBERG & CO., INC.,**
Plaintiff/Appellee,

v.

**John G. PAYSON and Robert F. Snow-den, co-trustees Murphey Investment Trusts, Defendants/Appellants.**

No. 2 CA–CV 88–0286.

Court of Appeals of Arizona,
Division 2, Department A.

March 9, 1989.

Review Granted Sept. 19, 1989.

Lewis and Roca by John N. Iurino and Megan E. Miller, Tucson, for plaintiff/appellee.

Miller & Pitt, P.C. by John A. Baade, Eugene N. Goldsmith and Andrea C. Weinstein, Tucson, for defendants/appellants.

## OPINION

HATHAWAY, Judge.

This appeal is taken from a jury verdict for plaintiff in an action to recover a brokerage commission.

Plaintiff/appellee Leo Eisenberg & Co., Inc., (Eisenberg) is a corporation duly qualified to engage in sales, leases, exchanges and other transactions involving real property in the State of Arizona. In the spring of 1981, Eisenberg entered into an oral commission agreement with Murphey Investment Trusts (the appellees shall collectively be referred to as the Trust), in connection with the securing of a tenant for a restaurant located on property owned by the Trust located at Broadway Village Shopping Center in Tucson, Arizona. Pursuant to the agreement, Eisenberg found, as a tenant, David B. Karmel. In anticipation of a lease being executed by Karmel, the parties entered into a written commission agreement on September 10, 1981. That agreement provided, inter alia, as follows:

> For and in consideration of your services rendered in connection with a restaurant lease to be executed by David B. Karmel as lessee at Broadway Village Shopping Center, we agree to pay you a commission equal to 5% of the minimum rent scheduled in the lease. Said commission payment is subject to and contingent upon full execution by all parties of the lease and will be payable upon the date the tenant opens for business....

Karmel and the Trust executed a lease on December 11, 1981. However, Karmel did not open the restaurant because of financial difficulties he experienced after entering into the lease agreement. The Trust and Karmel then rescinded the lease. Karmel subsequently incorporated with others as Karmel's on Broadway, Inc. (Broadway,

Inc.). On December 31, 1982, the Trust and Broadway, Inc. entered into a lease of the same property which was the subject of the first lease, and Broadway, Inc. opened a restaurant at that site.

Eisenberg demanded payment of the commission which was due under its commission agreement with the Trust. John Sarikas, the agent of the Trust, notified Eisenberg that no commission was due since David Karmel never opened for business.

Eisenberg brought suit to recover the commission. The trial court granted Eisenberg's motion for summary judgment. On appeal we reversed, *Leo Eisenberg & Co. Inc. v. Payson*, 152 Ariz. 390, 732 P.2d 1128 (App.1987), finding the commission agreement ambiguous. On remand, a jury trial resulted in a verdict for Eisenberg. The Trust raises several issues, one of which we find dispositive.

Contract interpretation is a legal issue which we determine de novo. *Gutmacher v. H & J Construction Co.*, 101 Ariz. 346, 419 P.2d 525 (1966). In our previous opinion, after reviewing the facts and the contract—the commission agreement, we stated:

> If the payment of the commission was subject to the opening of the restaurant, then Karmel's financial difficulties, which prevented the opening, excused the Trust from its obligation to pay a commission. That is the purpose of such a condition.

152 Ariz. at 393, 732 P.2d at 1131. We also stated: "There is no contention that there was any fraud or subterfuge by the Trust, Karmel and Broadway, Inc. in the recission of the first lease and the entry into the subsequent lease." 152 Ariz. at 392, 732 P.2d at 1130.

The essential facts of the case were before us when we issued our prior opinion. Nothing was adduced at the later trial which altered those facts. On remand, Eisenberg admitted that payment of the commission was conditioned upon the restaurant opening for business, but argued that the fact that a restaurant was opened by an entity with which Karmel was associat-

ed satisfied the condition. The problem with Eisenberg's position is that there is nothing in the record to show that Broadway, Inc. was the alter ego of Karmel. Eisenberg would have had to "pierce the corporate veil" which it failed to do.

The lease which resulted in the opening of the restaurant was executed by the Trust and Broadway, Inc. Eisenberg had no contract with the Trust regarding this lease. In this situation, the following rule applies:

> It has been held or recognized in other cases that where a broker's prospect refuses or is unable to purchase the property individually, and thereafter, without the intervention of the broker, the property is sold to a partnership or syndicate of which the prospect was a member at the time of the broker's negotiation, or with which he subsequently became associated for the purpose of purchasing the property, the broker is not entitled to compensation.

12 Am.Jur.2d Brokers § 191 at 933–934 (1964).

In *Marshall v. White*, 245 F.Supp. 514 (W.D.N.C.1965), the broker originally brought a prospective lessor and tenant together. The tenant was unable to close the deal individually. Later a syndicate of which he was a member completed the transaction. The court held:

> Marshall's prospect was Gilbert Windenwerder, who was unable to rent the property individually. It has been held that under such circumstances, when, thereafter, without the intervention of the broker, the property is sold to a syndicate of which the prospect was a member at the time of the broker's negotiation, the broker is not entitled to compensation.

245 F.Supp. at 517 (citation omitted). The situation here is similar. Karmel was brought together with the Trust by Eisenberg, but Karmel was unable to open for business. At a later date, with other investors and without the assistance of Eisenberg, Broadway, Inc., the corporation in which Karmel was a shareholder, signed a different lease and opened for business. Eisenberg was not the procuring cause of

that lease and is not entitled to a commission.

The commission agreement is clear on its face that Karmel had to sign a lease, be the lessee and be the tenant who opened for business. There is no evidence that the final event occurred and the trust was therefore entitled to summary judgment.

Appellants have requested attorney's fees for both trials and both appeals. We abide by our prior decision to deny attorney's fees for that appeal. Attorney's fees are granted for both trials and for this appeal upon compliance with Ariz.R.Civ. App.P. 21(c), 17B A.R.S.

Remanded for entry of summary judgment for appellants.

FERNANDEZ and HOWARD, JJ., concur.